# Exhibit D

Electronically Submitted
10/12/2023 9:11 AM
Gregg County District Clerk
By: Debbie Kinney ,deputy

CAUSE NO. 2023-1781-B

| | | |
|---|---|---|
| WINTERFIELD UNITED METHODIST CHURCH, | § § § | IN THE DISTRICT COURT |
| *Plaintiff,* | § § | |
| v. | § § | 124TH ___ JUDICIAL DISTRICT |
| CHURCH MUTUAL INSURANCE COMPANY, | § § § | |
| *Defendant.* | § § | GREGG COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

WINTERFIELD UNITED METHODIST CHURCH, Plaintiff(s) herein, files this its Original Petition against Defendant, CHURCH MUTUAL INSURANCE COMPANY, and, in support of its causes of action, would respectfully show the Court the following:

### I.     PARTIES

1.     Plaintiff owns the properties made the basis of this suit located at: 2616 Tryon Road, Longview, Texas and 1403 Garner Lane, Longview, Texas in Gregg County, Texas (the "Properties").

2.     Defendant, CHURCH MUTUAL INSURANCE COMPANY ("Defendant") is a foreign entity authorized to engage in the insurance business in the State of Texas and may be served by serving its Registered Agent for Service of Process, Corporation Service Company, 211 East 7th Street Suite 620, Austin, Texas 78701. Service is requested by private process server at this time.

### II.     DISCOVERY

3.     Plaintiff intends to conduct discovery under Level 3 control plan pursuant to the Texas Rules of Civil Procedure. TEX. R. CIV. P. 190.4.

### III.   CLAIM FOR RELIEF

4.      At this time, Plaintiff cannot assess accurately a definite limit to the damages they have

sustained, or will sustain in the future, as a result of Defendant's acts.  Given the early state of this

litigation, projections have not been declared regarding the full extent and severity of the injuries

and damages. In view of these circumstances, Plaintiff does not wish to impose any limit on what

it may present to the jury or what the jury may consider as a range of damages in this case; however,

Plaintiff makes the following representation in compliance with Tex. R. Civ. P. 47(c) to aid in the

efficient court administration.

5.      Plaintiff believes that the most reasonable option afforded under Tex. R. Civ. P. 47, at this

time, prior to the completion of discovery in the case, is to seek monetary relief over $250,000 but

not more than $1,000,000, exclusive of interest and costs, which is the only option that does not

require Plaintiff to select a speculative, arbitrary cap on their damages.  Plaintiff reserves the right

to modify or adjust this statement, as the litigation progresses, and additional evidence is compiled.

Regardless of what Plaintiff must state for administrative purposes as the amount of damages they

seek pursuant to Tex. R. Civ. P. 47(c), they desire to leave the final determination of damages, if

any, to the sole province of the jury, based upon the credible evidence presented to the jury at trial.

### IV.   JURISDICTION AND VENUE

6.      This court has subject matter jurisdiction of this cause of action, because it involves an

amount in controversy in excess of the minimum jurisdictional limits of this Court.

7.      Venue is proper in Gregg County under Tex. Civ. Prac. & Rem. Code §15.002(a)(1)

because the properties at issue are located in this County, the loss occurred in this County, and the

claims asserted herein arose from one or more acts and/or omissions that occurred in this County.

## V.    FACTUAL BACKGROUND

8.      Plaintiff entered into an agreement with Defendant to pay Defendant premiums in exchange for insurance coverage protecting Plaintiff's Properties from certain storm-related damages, should they occur.

9.      The agreement was drafted by Defendant and assigned Policy Number 0214433-02-273960 (the "Policy").  The Policy's effective date was from September 16, 2021 to September 16, 2022 (the "Policy Period").  Defendant believed the Properties were suitable to insure and promised to cover damage laid out in the Policy.

10.     Coverage under the Policy covers physical damage to the buildings and business personal property on the Properties as a result of hail, wind, and rain.

11.     During the Policy Period, a hail, wind, and rainstorm occurred at the Properties and throughout large swathes of Gregg County, Texas, which severely damaged Plaintiff's Properties.

12.     Plaintiff subsequently filed a claim under the Policy.

13.     Defendant assigned the claim, Claim Number 1473244 (the "Claim").

14.     Defendant hired Leading Edge Claims Service ("Leading Edge") that then assigned the Claim to independent adjuster Mike Hickey to inspect the Properties, Defendant claimed this individual was qualified to: identify hail and wind damage, determine whether a claim is covered or not covered, and make an estimate once covered damage is determined.

15.     Further, and without explanation, Defendant also retained an engineer, Craig M. Chonko with EFI Global ("EFI"), to assist with the inspection of the Properties.  If Leading Edge was truly a qualified and independent adjuster, there was no need to send out EFI. This decision lacks any reasonable basis other than to rubberstamp a denial on the Claim.

16.     Leading Edge and EFI visited the Properties on or about March 28, 2022.  During the inspection Defendant's agents found evidence of covered damage to the Properties caused by hail.

17.     EFI issued a report blaming the majority of the damage to Plaintiff's roof on previous damage, weathering, age, wear, tear, and deterioration.

18.     Defendant's reliance on this report was unreasonable because the EFI report contained contradictions and failed to take all pertinent information into account.

19.     For example, the EFI report stated that hail fall at the Properties could not have been over .9 inches, with an absolute max of 1.1 inches within 1 mile.  However, EFI included some, but not all publicly available NOAA data which shows that hail of up to 1.25 inches was experienced in Gregg County.[1]

20.     Further, EFI's report stated that there have been multiple hailstorms in the past few years which were the cause of virtually all of the documented hail damage at Plaintiff's Properties. However, according to the weather report they provided, none of these hailstorms had hail over .9 inches in diameter.  The pictures provided by EFI below show nearly 2 inch hail damage.



Photo No. G17:  A dent consistent with a hail impact within test area GA



Photo No. G18:  A dent consistent with a hail impact within test area GA

---

[1] *See* NOAA Storm Report for Gregg County, Texas, available at: https://www.ncdc.noaa.gov/stormevents/listevents

21.    The EFI report not only contained inconsistencies as to the true cause of damage but also failed to take all available information into account in order to minimize covered losses to the Properties, such as the publicly available NOAA report.

22.    Leading Edge conducted a follow-up inspection on April 26, 2022 based on EFI's report in order to prepare an estimate of damages.

23.    The estimate Leading Edge prepared totaled damage below the Plaintiff's deductible.

24.    Defendant indicated no payment would be made because the damage was below the deductible and denied the remaining damages in reliance on EFI's report and policy exclusions.

25.    Defendant wrongfully denied portions of Plaintiff's Claim by incorrectly applying the applicable Policy language, failing to fully investigate the damage, and accepting the conclusions of an incomplete report.

26.    Defendant did not conduct an adequate investigation into the damages claimed by Plaintiff when determining the Claim was not covered under the Policy.

27.    Moreover, Defendant made misrepresentations to Plaintiff about damages that were sustained by the wind, hail, and rainstorm, claiming that a large portion of the damage was not covered because it was either pre-existing, not "functionally" damaged, or that damage was excluded due to wear and tear.

28.    On information and belief, prior to Defendant insuring the Properties, it received an underwriter's inspection report detailing all pre-existing damage to the Properties. This report was obviously not shared with Defendant's agents because there would not be a need for conclusory findings about whether damage was pre-existing, the report would definitively list what damage was pre-existing and what was not.

29.     Further, Defendant strategically withheld this report from Plaintiff despite request. If Defendant was in possession of definitive proof of pre-existing damage, this should have been shared with Plaintiff.

30.     Instead of Defendant basing its decision on whether damaged property was covered under the Policy, Defendant based its decision on EFI's inconsistent and conclusory report which admitted to finding hail damage on all buildings.

31.     In addition to its improper investigation, Defendant then tried to evaluate whether the damage was or was not "functional" for any damage they were unable to explain under other exclusions in a last-ditch effort to avoid liability. Therefore, Defendant did not correctly evaluate Plaintiff's Claim for covered damages under the applicable Policy language.

32.     Further, Defendant did absolutely no testing on the metal portions of the roof to determine whether the damage was merely cosmetic. Industry and expert standards require testing be completed to determine whether cosmetic damage exists. EFI's inspection was merely an "eyeball test" inspection of the roofing surface and therefore the cosmetic determination by Defendant was not only conclusory but further evidences their pretextual investigation.

33.     On September 9, 2023, Defendant sent a letter to Plaintiff with a laundry list of repair demands that Plaintiff would need to complete before Defendant would be willing to renew the Policy. Unsurprisingly, Defendant was able to find multiple areas of functional damage due to things other than what they provide coverage for.

34.     Defendant and its agents assigned to the Claim failed to perform a proper inspection and as a result prepared a report that failed to include all of the covered damage sustained at the Properties and undervalued all damage observed during the inspection.

35.     Based on all facts listed above, Defendant and its agents performed an outcome-oriented investigation of Plaintiff's Claim, which resulted in a biased, unfair, and inequitable evaluation of Plaintiff's Claim for the covered Properties.

36.     Plaintiff fully complied with all requirements under the Policy to properly notify the Defendant of the loss to its covered Properties and cooperate with Defendant in its investigation of the Claim.

37.     In sum and without limitation, Defendant breached the terms of the parties' agreement and acted with bad faith under the Insurance Code, DTPA, and common law in at least the following ways:

   a. Defendant sent an adjuster who was purportedly qualified to handle the Claim, yet inexplicably retained an engineer to rubberstamp the predetermined outcome;

   b. Defendant's expert, EFI, completed the inspection without all relevant data or conducting sufficient testing to support their conclusions;

   c. Defendant unreasonably relied on the incomplete and contradictory report created by EFI;

   d. Defendant failed to share its underwriting file with EFI and Leading Edge when processing the Claim; and

   e. Defendant failed to share its underwriting file with Plaintiff at time of denial of the Claim;

## VI.    CAUSES OF ACTION

### A.    Breach of Contract

38.     Plaintiff incorporates each and every paragraph of this Petition by reference as though fully stated and/or set forth herein, and further states and alleges as follows.

39.     Defendant entered into the Policy with Plaintiff that covered, among other things, direct physical loss to the Properties caused by wind, hail and rain.

40.     Plaintiff's Properties sustained damage during the Policy Period as a result of a wind, hail, and rainstorm which is a covered cause of loss under the Policy.

41.     Plaintiff made timely a claim under the Policy for wind, hail, and rain damage.

42.     Subsequent thereto, Defendant breached the terms of the Policy by wrongfully denying covered damages and underpaying damages it found covered.

43.     As a result of Defendant's breach of the Policy, Plaintiff has sustained: (1) actual damages; (2) consequential damages (related to Plaintiff's inability to make necessary repairs, increased costs of construction and other related consequential damages); (3) incurred reasonable and necessary attorney's fees to date; and (4) Plaintiff has been unable to make all repairs to the Properties because of Defendant's prior material breach of failing to pay the amounts due and thus preventing Plaintiff from performing under the contract.

**B.    Insurance Code Violations**

44.     Plaintiff incorporates each and every paragraph of this Petition by reference as though fully stated and/or set forth herein, and further states and alleges as follows.

*Prompt Payment of Claims Statute*

45.     Plaintiff was insured under the Policy during the Policy Period.

46.     During the Policy Period, a wind, hail and rainstorm swept through Longview, Texas and damaged Plaintiff's Properties.

47.     Plaintiff gave proper notice of the Claim under the Policy to Defendant.

48.     Defendant is under an obligation to promptly pay Plaintiff's Claim pursuant to Texas Insurance Code § 542.058.

49.     To date, Defendant has not tendered payment for any of Plaintiff's damages arising out of its Claim with Defendant.

50.     Despite Defendant's clear obligation to pay, Defendant delayed payment of Plaintiff's Claim for a time exceeding the period specified by statute when it underpaid damages covered under the Policy and wrongfully denied damages clearly covered from the Policy.

51.     The failure of Defendant to pay for the losses and/or to follow the statutory time guidelines for accepting or denying coverage constitutes a violation of Article 542.058 of the Texas Insurance Code.

52.     To date, Defendant has not paid the full value of the Claim.  In addition to the amount of the Claim, Plaintiff is entitled to statutory damages at the highest lawful rate, statutory interest, and attorneys' fees.  TEX. INS. CODE § 542.060.

53.     Defendant's violations caused injury to Plaintiff. Plaintiff seeks all recoverable amounts, including: (1) actual damages; (2) statutory damages; (3) reasonable and necessary attorneys' fees and costs; and (4) pre- and post-judgment interest at the highest lawful rate.

**C.      Other Insurance Code Violations**

54.     Plaintiff incorporates each and every paragraph of this Petition as though fully stated and/or set forth herein, and further states and alleges as follows.

55.     Defendant is required to comply with Chapter 541 of the Texas Insurance Code.

56.     Plaintiff is a "person" under the Texas Insurance Code § 541.002. Likewise, Defendant is engaged in the business of insurance and is thus a "person" under § 541.002.

57.     Defendant is required to comply with Chapter 541 of the Texas Insurance Code.

58.     Defendant violated § 541.051 of the Texas Insurance Code by making statements misrepresenting the terms and/or benefits of the policy.

59.    Defendant violated § 541.060:

i.    **541.060(a)(1)- misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue.**

60.    Defendant misrepresented the following material facts:

    a.    Defendant's agents had obtained and reviewed all important relevant reports on the Properties and properly investigated the roof damage enabling Defendant to make a reasonable determination as to whether the roof damage was covered when in reality Defendant withheld the underwriter's inspection report;

    b.    There was no damage to Plaintiff's roofing system sustained during a storm which occurred during the Policy Period;

    c.    Interior damage was not due to a covered loss;

    d.    Virtually all observed storm related damage was from wind, hail, and rainstorms which occurred outside the Policy Period;

    e.    The actual cause of any damage to the Properties resulted from long-standing wear and tear, historical hail/wind events, lack of maintenance, foot traffic, or other excuses supposedly excluded by the Policy; and

    f.    Any damage caused to the Properties by storms during the Policy Period was merely cosmetic and not functional;

61.    Each of these acts and omissions, singularly or in conjunction with others, constituted a

violation of Texas Insurance Code § 541.060(a)(1), which proximately caused Plaintiff damages.

ii.    **541.060(a)(2) - failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear.**

62.    Defendant failed to attempt in good faith to effectuate a prompt, fair, and equitable

settlement of a claim with respect to which the insurer's liability had become reasonably clear by:

    a.    Misrepresenting material facts as set forth in paragraph 60;

    b.    Failing to review its underwriter's inspection report and consider it during the processing of the Claim;

    c.    Failing to properly investigate the exterior and interior damage;

    d.    Failing to properly research and investigate the necessary materials and repair methods required to return Plaintiff's Properties back to its pre-loss condition;

e.  Failing to send the underwriter's inspection report to either EFI or Leading Edge for them to review when determining whether the storm and interior damage at the Properties was pre-existing;

f.  Ignoring and/or attempting to discredit findings that show covered damage in the Claim;

g.  Failing to acknowledge that hail/wind damage sustained during the Policy Period affected and hindered the overall functionality of the roofing system; and

h.  Failing to write an estimate that includes all storm-created openings and damage found to be sustained by the roofing system within the Policy Period.

63.    Each of these acts and omissions, singularly or in conjunction with others, constituted a

violation of Texas Insurance Code § 541.060(a)(2), which proximately caused Plaintiff damages.

*iii.*    ***541.060(a)(3) - failing to promptly provide Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim.***

64.    Defendant violated § 541.060(a)(3) by failing to promptly provide Plaintiff a reasonable

basis for Defendant's denial of the Claim.

65.    Defendant's denial letter was misleading because it was based solely on the outcome-

oriented, contradictory, and incomplete report from EFI.

66.    Defendant failed to explain:

a.  How EFI or Leading Edge could properly determine covered damage without reviewing the underwriter's inspection report;

b.  How EFI or Leading Edge could determine historical damage without the underwriter's inspection report; nor

c.  How the interior water damage was not covered when it entered through storm-created openings.

67.    Further, Defendant's denial letter was mostly regurgitation of Policy language and the

excuses its engineering firm, EFI, came up with in collusion with Defendant.

68.    If Defendant had definitive proof damage to the Properties pre-existed the Policy Period,

then such information should have been disclosed to Plaintiff. However, Defendant has provided

no explanation as to why they withheld such an important document as the underwriter's inspection report.

69.     Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(3), which proximately caused Plaintiff damages.

> ### iv.    *514.060(a)(4) by failing within a reasonable time to affirm or deny coverage of a claim to Plaintiff or submit a reservation of rights to Plaintiff.*

70.     Defendant failed to adequately inspect the Properties and as a result failed to pay Plaintiff's Claim in a timely manner.

71.     Specifically, Defendant took months to render a decision letter that was contradictory and confusing. EFI's inspection report was finalized on April 5, 2022 and Leading Edge's inspection report (which was based on the EFI report) wasn't finalized until July 11, 2022. There is no reason why Defendant could not issue a non-confusing decision letter prior to August 18.

72.     The information provided to Plaintiff by the Defendant would not allow the average reasonably prudent person to be able to understand why exactly their claim was being denied, or how to go about contesting these inconsistent findings, let alone, the unsophisticated Church here.

> ### v.    *541.060(a)(7) - refusing to pay the claim without conducting a reasonable investigation with respect to the claim.*

73.     Defendant violated § 541.060(a)(7) by:

    a. Misrepresenting the material facts as set forth in paragraph 60;

    b. Failing to review its underwriter's inspection report and consider it during the processing of the Claim;

    c. Failing to properly investigate the exterior and interior damage;

    d. Failing to properly research and investigate the necessary materials and repair methods required to return Plaintiff's Properties back to its pre-loss condition;

    e. Failing to send the underwriter's inspection report to either EFI or Leading Edge for them to review when determining whether the storm and interior damage at the Properties was pre-existing;

  f. Ignoring and/or attempting to discredit findings that show covered damage in the Claim;

  g. Failing to acknowledge that hail/wind damage sustained during the Policy Period affected and hindered the overall functionality of the roofing system;

  h. Failing to write an estimate that includes all storm-created openings and damage found to be sustained by the roofing system within the Policy Period; and

  i. Failing to pay the Claim.

74. Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(7), which proximately caused Plaintiff damages.

75. Defendant violated § 541.061 by making an untrue statement of material fact by grossly underestimating the cost to repair and replace Plaintiff's Properties, representing that Defendant's agents properly researched whether certain damaged Properties could be repaired versus having to be replaced, and that all relevant documents were disclosed and considered by Defendant's agents in determining whether the damage sustained to the Properties was a covered cause of loss.

**D.** **Deceptive Trade Practices Act Violations**

76. Plaintiff incorporates each and every paragraph of this Petition as though fully stated and/or set forth herein, and further states and alleges as follows.

77. At all material times hereto, Plaintiff was a consumer who purchased insurance products and services from Defendant.

78. Defendant is a "person" as defined by § 17.45 of the Texas Business and Commerce Code.

79. Defendant violated the Texas Deceptive Trade Practices Act in the following respects:

  a. Defendant represented that the Policy confers or involves rights, remedies, or obligations which it does not have, or involve, or which are prohibited by law;

  b. Defendant failed to disclose information concerning goods or services which was known at the time of the transaction when such failure to disclose such information was intended to induce the consumer into a transaction that the consumer would not have entered into had the information been disclosed; and

      c.  Defendant, by accepting insurance premiums and commissions but refusing, without a reasonable basis, to pay benefits due and owing, engaged in an unconscionable action or course of action as prohibited by the DTPA § 17.50(a)(1)–(3) in that this Defendant took advantage of Plaintiff's lack of knowledge, ability, experience, and capacity to a grossly unfair degree, that also resulted in a gross disparity between the consideration paid in the transaction and the value received, in violation of Chapter 541 of the Insurance Code.

80.    On information and belief, Defendant knowingly committed the acts complained of above.

81.    On information and belief, just prior to the covered storm event, Defendant received an underwriter's inspection report which provided an overview of the Properties' condition for insuring purposes.

82.    On information and belief, the underwriter's inspection report from 2021 did not indicate any such lack of maintenance or wear and tear at Plaintiff's Properties.

83.    Further, Defendant's estimates were not reasonable as they were the result of outcome-oriented investigations.  Defendant owed Plaintiff the full benefits under the Policy for a covered losses and instead of documenting damage to the Properties, they arbitrarily ignored extensive internal documentation when denying the Claim.

84.    As a result, Plaintiff is entitled to exemplary and/or treble damages pursuant to the DTPA and Texas Insurance Code § 541.152(a)-(b) and reasonable and necessary attorney's fees as allowed by § 17.50 of the Business and Commerce Code.

**E.**    **Breach of The Duty of Good Faith and Fair Dealing**

85.    Plaintiff incorporates each and every paragraph of this Petition as though fully stated and/or set forth herein, and further states and alleges as follows.

86.    Plaintiff and Defendant entered into a valid and enforceable insurance policy.

87.    Defendant owed Plaintiff the common law duty of good faith and fair dealing.

88.    Defendant breached the common law duty of good faith and fair dealing owed to Plaintiff by:

    a.  Misrepresenting the material facts as set forth in paragraph 60;

    b.  Failing to review its underwriter's inspection report and consider it during the processing of the Claim;

    c.  Failing to properly investigate the exterior and interior damage;

    d.  Failing to properly research and investigate the necessary materials and repair methods required to return Plaintiff's Properties back to its pre-loss condition;

    e.  Failing to send the underwriter's inspection report to either EFI or Leading Edge for them to review when determining whether the storm and interior damage at the Properties was pre-existing;

    f.  Ignoring and/or attempting to discredit findings that show covered damage in the Claim;

    g.  Failing to acknowledge that hail/wind damage sustained during the Policy Period affected and hindered the overall functionality of the roofing system;

    h.  Failing to write an estimate that includes all storm-created openings and damage found to be sustained by the roofing system within the Policy Period; and

    i.  Failing to pay the Claim.

89.    Defendant's failure or refusal to provide its own agents with the underwriter's inspection report reveals that it was never planning on launching a good faith investigation into Plaintiff's Claim. At the very least, this action raises a question as to the objectivity of the claims process. *Gardenbure v. Century Surety Co.*, No. 6:21-CV-00873-ADA (W.D. Tex. Feb. 7, 2023).

90.    Upon information and belief, Defendant's actions were performed without due regard or care for the claim process and were done intentionally and/or with gross negligence.

91.    Defendant was aware at all times that its actions would result in the denial and underpayment of Plaintiff's Claims and result in mental anguish and extraordinary harm to Plaintiff.

92.    As a result of Defendant's aforementioned acts and/or omissions, Plaintiff sustained: (1) actual damages; (2) consequential damages (related to Plaintiff's inability to make necessary repairs, increased costs of construction and other related consequential damages); (3) incurred

reasonable and necessary attorney's fees to date; and (4) Plaintiff has been unable to make all repairs to the Properties because of Defendant's prior material breach of failing to pay the amounts due and thus preventing Plaintiff from performing under the contract.

## VII.    ATTORNEYS' FEES

93.    Plaintiff incorporates each and every paragraph of this Petition as though fully stated and/or set forth herein, and further states and alleges as follows.

94.    Plaintiff engaged the undersigned attorneys to prosecute this lawsuit against Defendant and agreed to pay reasonable attorneys' fees and expenses through trial and any appeal.

95.    Plaintiff is entitled to reasonable and necessary attorney's fees pursuant to Tex. Civ. Prac. & Rem. Code §§ 38.001-38.003 because Plaintiff is represented by an attorney, presented the Claims to Defendant, and Defendant did not tender the just amount owed before the expiration of the 30th day after the Claims were presented.

96.    Plaintiff further prays that it be awarded all reasonable attorneys' fees incurred in prosecuting its causes of action through trial and any appeal pursuant to §§ 541.152 and 542.060 of the Texas Insurance Code.

97.    Plaintiff further prays that it be awarded all reasonable and necessary attorneys' fees incurred in prosecuting Plaintiff's DTPA causes of action above pursuant to § 17.50(d).

## VIII.    CONDITIONS PRECEDENT

98.    All conditions precedent to Plaintiff's right to recover have been fully performed or have been waived by Defendant. TEX. R. CIV. P. 54.

## IX.    DEMAND FOR JURY

99.    Plaintiff demands a jury trial and tenders the appropriate fee. TEX. R. CIV. P. 216

## X.     PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff herein prays that, upon final hearing of the case, it recovers actual damages, statutory interest and treble/exemplary damages from and against Defendant that may reasonably be established by a preponderance of the evidence, and that Plaintiff be awarded attorneys' fees through trial and appeal, costs of court, pre-judgment interest, post-judgment interest, and such other and further relief, general or special, at law or in equity, to which Plaintiff may show it to be justly entitled.

Respectfully submitted,

*/s/ Vincent P. Circelli*
Vincent P. Circelli
State Bar No. 24058804
vcircelli@dcclawfirm.com
Preston J. Dugas III
State Bar No. 24050189
pdugas@dcclawfirm.com
**DUGAS & CIRCELLI, PLLC**
1701 River Run, Suite 703
Fort Worth, Texas 76107
Telephone:     (817) 945-3061
Facsimile:     (682) 219-0761

**ATTORNEYS FOR PLAINTIFF**